IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

FATHER LASTER                                                    PLAINTIFF

v.                                            CAUSE NO. 1:14CV252-LG-JCG

NCBC SECURITY                                                   DEFENDANT

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the Motion for Summary Judgment [30] filed by

NCBC Security.  The plaintiff Father Laster has not filed a response in opposition

to the Motion.  After reviewing the Motion, the record in this matter, and the

applicable law, the Court finds that NCBC is entitled to summary judgment, and

Laster's claims should be dismissed with prejudice.

## FACTS AND PROCEDURAL HISTORY

On August 10, 2013, Laster lived in a residence on the Navy base with his

fiancee, Lieutenant Commander Cheryll Hawthorne.  (Def.'s Mot., Ex. A at 59, ECF

No. 30-1).  Laster and Hawthorne argued over his social security benefits.  (*Id.* at

67-68).  Laster called base security because he thought Hawthorne had a knife, and

he wanted to obtain documentation from the police that Hawthorne had taken his

money.  (*Id.* at 93-95).  Hawthorne also called base security as a result of the

argument, reporting that Laster refused to leave the base.  (Def.'s Mot., Ex. 1 to Ex.

B, ECF No. 30-2).  Hawthorne's neighbor, Stacy Dupre, called security to report

that her seven-year-old son said Laster knocked on their door while holding a

knife.[1]  *Id.*

NCBC security officers Kayla Sisk, Timothy S. Harrison, William Kaeding, and Newell D. Schultz responded to these three calls for assistance.  Upon the officers' arrival, Hawthorne informed Sisk that Laster suffers from schizophrenia, and he had not taken his medication since May 2013.  (Def.'s Mot., Ex. C, ECF No. 30-3).  Hawthorne was frisked, and no knife was found.  (*Id.*)  Schultz attempted to frisk Laster, but Laster "became irritated and started acting out, at which time he was handcuffed and placed in the rear seat of a NCBC Security Department vehicle."  (*Id.*)  Laster began banging his head against the window of the vehicle.  (*Id.*)  He also threatened the lives of the responding officers and their families.  (Def.'s Mot., Ex. D, ECF No. 30-4).  Kaeding and Harrison "removed Laster from the vehicle and gently placed him on the ground in a prone position."  (Def.'s Mot., Ex. C, ECF No. 30-3).  After Laster was placed in the prone position, he was searched and three live rounds of ammunition were found in his pocket.  (*Id.*)  Laster continued to resist, shouting and spitting at the officers.  (Def.'s Mot., Ex. D, ECF No. 30-3).  American Medical Response arrived, placed Laster on a gurney, and transferred him to the Veterans Administration Medical Center so that he could receive psychiatric care and treatment.  (Def.'s Mot., Ex. C, ECF No. 30-3).

Laster concedes that he suffers from schizophrenia, and he believes that his

---

[1]  After the incident, the child clarified during questioning by base security that Laster did not have a knife; Laster was merely talking about a knife when the child answered the door.  (Def.'s Mot., Ex. 1 to Ex. B, ECF No. 30-2).

medication had been reduced prior to this incident.  (Def.'s Mot., Ex. A at 43, 45, 124-25, ECF No. 30-1).  Laster testified that he was transferred to the mental health ward after he arrived at the veterans' hospital.  (*Id.* at 128).  He remained there for about one week after the incident.  (*Id.* at 132).

Laster filed this pro se lawsuit against NCBC security, alleging unlawful detainment,[2] prevention of exercise of First Amendment free speech rights, cruel and unusual punishment, and violation of the Universal Declaration of Human Rights.[3]  In an Order [14] entered on October 16, 2014, this Court granted NCBC's Motion to Dismiss Laster's First Amendment, Eighth Amendment, and Universal Declaration of Human Rights claims on the basis of sovereign immunity.  NCBC has now filed a Motion seeking summary judgment as to Laster's only remaining claim for unlawful detention.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail

---

[2] NCBC claims that Laster did not allege unlawful detainment in his Complaint.  However, Laster stated that he was seeking punitive damages for "unlawful detainment" in the first paragraph of his Complaint.  (Compl. at 2, ECF No. 1).

[3] This is the second lawsuit that Laster has filed concerning this incident.  The first lawsuit, cause no. 1:14cv14-LG-JMR, was dismissed without prejudice on April 10, 2014, for lack of jurisdiction due to Laster's failure to exhaust the administrative review process for his claims pursuant to the Federal Tort Claims Act.  Laster filed the present lawsuit after he exhausted his administrative remedies.

as a matter of law on any claim.  Fed. R. Civ. P. 56.  The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Id.* at 324-25.  The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

A motion for summary judgment cannot be granted simply because there is no opposition.  Factual controversies are resolved in favor of the nonmoving party, but only when there is an actual controversy; that is, when both parties have submitted evidence of contradictory facts.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Ultimately, the movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response has been filed. *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

Since Laster is proceeding pro se, this Court is required to liberally interpret his Complaint.  *See Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 629 (5th Cir. 2014).  As a result, this Court construes Laster's "unlawful detainment" claim

as an attempt to state a false imprisonment claim pursuant to the Federal Tort

Claims Act (FTCA).

The FTCA waives sovereign immunity for any:

negligent or wrongful act or omission of any employee of the
Government while acting within the scope of his office or employment,
under circumstances where the United States, if a private person,
would be liable to the claimant in accordance with the laws of the place
where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  Liability for claims made under the FTCA is therefore

determined under substantive state law.  *In re FEMA Trailer Formaldehyde Prods.*

*Liab. Litig.*, 668 F.3d 281, 287 (5th Cir. 2012).  The FTCA's waiver of sovereign

immunity is subject to an exception for intentional torts, including false

imprisonment claims, unless the claim is made "with regard to acts or omissions of

investigative or law enforcement officers of the United States Government."  28

U.S.C. § 2680(h).  The phrase "investigative or law enforcement officer" is defined as

"any officer of the United States who is empowered by law to execute searches, to

seize evidence, or to make arrests for violations of Federal law."  *Id.*  NCBC does not

dispute that Laster's alleged claim arose out of the actions of federal law

enforcement officers.

Under Mississippi law, "[t]o show false imprisonment on the part of a

defendant, the plaintiff must prove that [he] was: (1) detained and (2) that such

detainment was unlawful."  *Mayweather v. Isle of Capri Casino, Inc.*, 996 So. 2d

136, 140 (¶ 14) (Miss. Ct. App. 2008).  "The second element turns on whether,

looking at the totality of the circumstances, the actions of the defendant were

'objectively reasonable in their nature, purpose, extent and duration'; therefore, it is a question for the jury." *Id.* Nevertheless, this does not mean that summary judgment cannot be granted where there is no genuine issue of material fact that the detention was reasonable. *See Smith v. Magnolia Lady*, 925 So. 2d 898, 904 (¶ 17) (Miss. Ct. App. 2006).

The Court finds that NCBC's detention of Laster was reasonable. The record in this matter reflects that NCBC officers arrived on the scene in response to three separate calls for assistance, including a report from a neighbor that Laster was in possession of a knife. As a result, the officers had cause to frisk Laster. When Laster failed to comply and acted in a disorderly manner, it was reasonable for the officers to handcuff him and place him in a patrol car. Laster was removed from the car and held in the prone position, because he was attempting to harm himself and spit on the responding officers. The officers had been informed of Laster's illness, and they obtained medical assistance on his behalf. The record demonstrates that NCBC's detention of Laster lasted no longer than was necessary to determine that Laster was not armed and to obtain the medical attention that he needed.

Laster has not filed a response to NCBC's Motion for Summary Judgment or provided any affidavits, declarations, or evidence that contradicts the declarations and evidence produced by NCBC. However, Laster produced an unsworn letter signed by Hawthorne in support of his initial Complaint. In the letter, Hawthorne attempts to explain why Laster had difficulty complying with the frisk, and she states that she does not think Laster was capable of hitting his head on the window

of the patrol car.  Hawthorne's unsworn statement is not competent summary judgment evidence pursuant to Fed. R. Civ. P. 56(e).  *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 515 (5th Cir. 2001).   Nevertheless, even if Hawthorne's letter had been admissible, her account of the events would not create a genuine issue of material fact as to the reasonableness of the officers' actions in detaining Laster.  As a result, the Court finds that NCBC's Motion for Summary Judgment should be granted.

## CONCLUSION

For the foregoing reasons, NCBC is entitled to judgment as a matter of law.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [30] filed by NCBC Security is **GRANTED**.  This lawsuit is hereby **DISMISSED WITH PREJUDICE**.  A separate judgment will be entered pursuant to Fed. R. Civ. P. 58(a).

**SO ORDERED AND ADJUDGED** this the 5th day of June, 2015.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE